IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
**MIDDLE DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | ) |
| | ) |
| v. | ) No. |
| | ) |
| **JOHN MICHAEL GOLDEN,** | ) |
| | ) |
| **Defendant.** | ) |

**INFORMATION**

The United States Attorney charges that:

**INTRODUCTION**

1.  The Defendant, **JOHN MICHAEL GOLDEN** ("**GOLDEN**"), is an adult resident of the state of Alabama. At all times relevant to this Information, **GOLDEN** was the founder and owner of Wolf-Tek, LLC; MountainTop Timber, LLC; and DroneTek, Inc.

2.  **GOLDEN** founded Wolf-Tek, LLC in or around 2013. Wolf-Tek was a technology company that developed geographic information software platforms, engines, databases, applications, tools, and electronic equipment and devices. One product that Wolf-Tek attempted to develop and manufacture was a dog collar with geolocation capabilities.

3.  MountainTop Timber, LLC is a business that **GOLDEN** used to solicit investments for timber leases he purportedly possessed.

1

4. **GOLDEN** founded DroneTek, Inc. in or around November 2018. **GOLDEN** founded DroneTek with the goal of developing, manufacturing, marketing, and selling drones. According to its website, DroneTek's "focus is to provide solutions with mission specific drones, tethers, and technology for public and private agencies that ensures success." As part of DroneTek's business, customers could purchase drones, purchase drone tethers, or bring in drones for repairs.

## COUNT ONE
## Wire Fraud
## 18 U.S.C. § 1343

5. The United States adopts and realleges the allegations contained in paragraphs 1 through 4 of the Introduction to this Information as though fully set out herein.

6. Beginning in or around January 2018 and continuing until at least July 2022, within the Northern District of Alabama, and elsewhere, the defendant,

**JOHN MICHAEL GOLDEN**,

with intent to defraud, knowingly devised and intended to devise a scheme and artifice to defraud investors of money and funds and to obtain money and funds from investors by means of materially false and fraudulent pretenses, representations, and promises.

## MANNER AND MEANS

7.  It was part of the scheme and artifice that in or around the beginning of 2018, **GOLDEN** began making misrepresentations to various individuals to induce them into investing in Wolf-Tek. For example, in early 2018, **GOLDEN** approached Investor #1 about investing in Wolf-Tek and told him that he was working on deals with Flextronics and Amazon that were worth between $25-$30 million. **GOLDEN** also represented that Amazon wanted to acquire the licensing for one of Wolf-Tek's patents that would be worth at least $600 million. **GOLDEN** further represented that EBSCO had expressed in interest in purchasing Wolf-Tek. **GOLDEN** made these misrepresentations to induce Investor #1 to invest in Wolf-Tek.

8.  It was further part of the scheme and artifice that **GOLDEN** made misrepresentations regarding his access to timber leases and ability to harvest timber for profit to induce victims to invest in MountainTop Timber. **GOLDEN** also provided Promissory Notes to investors in which he misrepresented his ability to repay the investors. For example, in or around November 2020, **GOLDEN** represented to Investor #2 that he had acquired timber leases and made a deal with an international paper company to clear the timber. **GOLDEN** made these misrepresentations to induce Investor #2 to invest in MountainTop Timber. **GOLDEN** also provided a Promissory Note to Investor #2 in which he promised repayment within only a few weeks after Investor #2 provided the funds to

**GOLDEN**. **GOLDEN** did not repay Investor #2 any funds by the date due on the Promissory Note, and he did not use the funds to harvest timber pursuant to a timber lease.

9. It was further part of the scheme and artifice that **GOLDEN** induced victims to invest in DroneTek by making misrepresentations about DroneTek, including that DroneTek was imminently going to be sold for millions of dollars and that DroneTek had hundreds of pre-orders that it simply needed capital to fill. **GOLDEN** would also induce some investors to invest by providing them with a Promissory Note promising high returns and guaranteed repayment within a short time frame.

10. It was further part of the scheme and artifice that **GOLDEN** induced Investor #3 to invest $730,000 in DroneTek based on representations that **GOLDEN** knew were false, including representations regarding the profitability of DroneTek, promised rates of return, and representations regarding how the invested funds would be used.

11. It was further part of the scheme and artifice that **GOLDEN** induced Investor #4 to invest approximately $210,000 in DroneTek based on representations that **GOLDEN** knew were false, including representations that DroneTek had 750 pre-orders and that **GOLDEN** could "cover most of the manufacturing cost myself but not all." **GOLDEN** also represented to Investor #4 that DroneTek had no debt.

12. It was further part of the scheme and artifice that **GOLDEN** made the same misrepresentations he to made to Investor #4 to other investors in Texas, causing them to invest approximately $862,000 in DroneTek between January 2023 and March 2023.

13. It was further part of the scheme and artifice that, in an effort to placate victims, **GOLDEN** would make misrepresentations to victims regarding the status of repaying losses. For example, **GOLDEN** sent the following communications to victims in this case:

- (July 26, 2019) **GOLDEN** to Investor #1: It's still in processing but I could safely say if you want to meet Thursday or Friday next week I'll have a complete check in hand to give you.

- (May 20, 2020) **GOLDEN** to Investor #1: I'll definitely have it to you by Next week or sooner. It could still be this week . . . . I see the money now in the accounts and all is going to be great!

- (July 1, 2020) **GOLDEN** to Investor #1: I can push a button today and you'll get your 150k . . . . But I was trying to give y'all much more money because of all the time and patience y'all were giving me. I'm extremely sorry! . . . I'm not giving you any excuses that aren't real. I'll send your money back. No need for litigation . . . . Sending your money back.

- (October 21, 2021) **GOLDEN** to Investor #3: I'll have funds by the 28th. That's been definitely confirmed this morning.

- (December 7, 2021) **GOLDEN** to Investor #3: You will be completely paid off this week though. I assure you that. You will get the 30k first then the rest all this week. I'm also going with another Manufacturing facility that's going to pay us quickly. We have a lot [of] money in accounts receivable.

- (February 3, 2022) **GOLDEN** to Investor #3: I just left the bank. Everything should be done. Funds will go in tomorrow or Monday.

14. It was further part of the scheme and artifice that **GOLDEN** would use the money he received from victims to repay prior victims, or he would use these funds for personal expenses.

## THE WIRE COMMUNICATION

17. On or about July 22, 2021, within the Northern District of Alabama, the defendant,

**JOHN MICHAEL GOLDEN**,

for the purpose of executing the above-described scheme and artifice, did knowingly transmit and cause to be transmitted in interstate commerce, by means of a wire communication, certain signs, signals and communications, that is, Defendant **JOHN MICHAEL GOLDEN** caused an interstate wire communication between Alabama and another state to be made for the electronic transfer of funds, to wit, a bank wire transfer from Investor #3's Metro Bank account ending in -7586 in the amount of $35,000.00, which was credited to a DroneTek bank account at Truist Bank ending in -3876.

All in violation of Title 18, United States Code, Section 1343.

## NOTICE OF FORFEITURE:
## [18 U.S.C. §§ 981(a)(1)(C), 982(a)(2)(A), and 28 U.S.C. § 2461(c)]

The United States further charges:

1. The allegations of paragraphs 1-17 of this Information are re-alleged and incorporated by reference as though set forth fully herein for the purpose of alleging forfeiture to the United States pursuant to the provisions of Title 18, United States Code, Section 981(a)(1)(C), 982(a)(2)(A), and 28 United States Code, Section 2461(c).

2. Pursuant to Rule 32.2(a), Fed. R. Crim. P., the defendant is hereby notified that, pursuant to 18 United States Code, Sections 981(a)(1)(C) and 982(a)(2)(A), and 28 United States Code, Section 2461(c), the defendant,

**JOHN MICHAEL GOLDEN**,

upon conviction of the offense set forth in this Information, shall forfeit to the United States any property, real or personal, that constitutes or is derived from, directly or indirectly, proceeds traceable to the commission of the said violations, including but not limited to a forfeiture money judgment representing the amount of proceeds obtained as a result of the offenses alleged.

3. If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third party;

  c.  has been placed beyond the jurisdiction of the court;

  d.  has been substantially diminished in value; or

  e.  has been commingled with other property which cannot be divided without difficulty;

the United States shall be entitled to forfeiture of substitute property, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1) and Title 28, United States Code, Section 2461(c).

              PRIM F. ESCALONA
              United States Attorney


              */s/ Electronic Signature*
              _____
              RYAN S. RUMMAGE
              Assistant United States Attorney